ALFRED B. COULTER, plaintiff in error, vs. WILLIAM C. WYLY, defendant in error.

A was indebted to B by note, and was the holder of a note on C for nearly the same amount. He stipulated with B for twelve months indulgence, and turned over to him C's note as collateral security, taking B's receipt therefor, expressing that the collateral note was to be delivered to A whenever the principal note was paid. A few days before the period of indulgence had expired, B put both notes in the hands of his attorney for suit. The attorney sued on the principal note as ordered, but with the maker of the collateral note he entered into a contract to indulge him for twelve months at the price of forty dollars per month. On reporting this arrangement to his client, the latter disapproved of it: whereupon, the attorney advanced to him the whole amount due on the principal note, less a collecting fee, and became, himself, the owner of the note. Afterwards, the client refunded to the attorney what he had advanced, and took the note back. All this time the suit on it was still pending. *Held*—

[1.] That B, the creditor, was bound to no diligence touching the collection of the collateral note; and was not even authorized to put the same in suit.

[2.] That he was not precluded by the foregoing facts from collecting the whole amount of the principal note, in the pending action.

Complaint. In Floyd Superior Court. Tried before Judge HAMMOND. January Term, 1862.

This action was brought by Wyly against Coulter, upon a promissory note made by the latter for $1,750.00, payable to George P. Burnett, or bearer, dated April 1st, 1854, and due December 25th, 1855, bearing interest from date.

The declaration was filed in office February 11th, 1857, the defendant having acknowledged service thereon on the 10th of January preceding.

The defendant pleaded (1) the general issue, and (2) that the plaintiff had, for a valuable consideration, contracted with him, on the 16th of January, 1856, not to sue upon said note within twelve months thereafter; and that having brought suit on the 10th of January, 1857, he ought not to have or maintain the same. The record, as sent up to the Supreme Court, contains no further plea; but the defence actually gone into at the trial brought before the jury the following facts:

The plaintiff, being at the time the holder of this note, gave the defendant a receipt in these words: "Received of

Alfred B. Coulter a note on M. W. Johnson, dated March 4th, 1854, for $1,750.00, due 25th day of December, 1856, with interest from the first of January, 1855, as collateral security for a note I hold on said Coulter for $1,750.00, dated 1st day of April, 1854, and due 25th day of December, 1855, with interest from date. Whenever the said Coulter's note is paid, I am to deliver up to said Coulter, or his order, said note on Johnson. Interest on Johnson's note payable annually. Said Coulter not to be pressed by suit for twelve months. January 16th, 1856.

W. C. WYLY."

And the defendant gave the plaintiff the following obligation: "Whereas, W. C. Wyly holds a note on me for $1,750.00, dated 1st day of April, 1854, and due 25th day of December, 1855, payable to Geo. P. Burnett, or bearer, with interest from date. Now, if I fail to pay said Wyly one thousand dollars on the first day of next April, on said note, then I bind and obligate myself to pay said Wyly five and one-half per cent. interest on said thousand dollars, from the 25th day of last December, in addition to seven per cent interest which said note draws, until said thousand dollars is paid, in consideration of his indulgence for said thousand dollars. Witness my hand and seal, this 16th January, 1856. Said note not to be pressed by suit, in the event of the above payment, until the expiration of twelve months from its maturity. January 16th, 1856.

ALFRED B. COULTER."

In or prior to January, 1857, the plaintiff placed both notes in the hands of W. T. Trammell, an Attorney at Law, for collection, agreeing to pay him for collecting the note on defendant, fifty dollars. He did not constitute him his attorney or agent for any purpose but to collect. He gave him no authority whatever, to make any arrangement with Johnson, the maker of the collateral note, for indulgence.

Trammell, with a declaration already made out for suit on Johnson's note, called on Johnson for payment; and the latter, not having the money, offered to give Trammell his

note for $500.00, to forbear suit on the former note for twelve months.  Trammell, telling him that he had no authority to make any arrangement for indulgence, that it was an outside transaction, and that plaintiff would not be bound by it, took the note offered ; and, as Johnson said he would not let the same run more than sixty days, but in that time would pay off the former note, he gave Johnson the following instrument: "I have this day taken M. W. Johnson's note for $500.00, payable at twelve months.  Now, if said Johnson, at any time before the expiration of twelve months from this date, pays a certain note of $1,750.00, dated March 4th, 1854, and due 25th December, 1856, payable to A. B. Coulter, or order, with interest from 1st January, 1855, which I hold as collateral, he has the privilege of doing so by paying forty dollars certain, and forty dollars per month for the time that elapses between this and the payment of said note of $1,750.00, and take up the five hundred dollar note, this 10th January, 1857.

W. T. TRAMMELL."

A few days after making this arrangement with Johnson, Trammell reported it to the plaintiff, who disapproved of it, saying that all he wanted was the principle and interest of the note on defendant.  Between three and four months later, Trammell paid to the plaintiff the principle and interest on said note, less fifty dollars, the agreed fee for collecting, and became the owner of the note.  He remained the owner until the Spring of 1858, (about one year) when the plaintiff, after hearing that interrogatories addressed to himself had been sued out in this case, refunded to him the money and took the note back, and it remained his from that time.

Upon being inquired of by defendant, in August, 1857, touching the arrangement with Johnson, Trammell told him he had taken Johnson's note for $500.00, not to sue on the large note for twelve months; and to the extension of time the defendant made no objection.  Trammell, at the same

time, proposed if defendant would pay off his own note, to surrender to him both of Johnson's.

Upon the five hundred dollar note nothing was ever paid. It was put in suit, and being renewed by Johnson, the suit was dismissed. Nor was anything ever paid on Johnson's large note. Both parties introduced evidence upon the question of his solvency at the time indulgence was granted him by Trammell, and whether he became insolvent afterwards; but it is unnecessary to reproduce it here.

The jury found for the plaintiff $91.87, with interest thereon from January 1st, 1855.

Thereupon the plaintiff moved for a new trial upon the grounds:

1, 2, 3, 4. That the verdict was contrary to law, to evidence, to law and evidence, and decidedly and strongly against the weight of evidence.

5. That the verdict was against the charge of the Court, in this: The Court charged the jury, if the plaintiff was the owner of the note, and disapproved the arrangement that 'his attorney, W. T. Trammell, made with Miles W. Johnson, he was not bound by it unless he afterwards approved it, and was entitled to recover unless he had done something to injure the defendant; and that if Johnson was insolvent at the time Trammell made the arrangement with him, and the money could not have been made out of him by suit at law, the defendant was not damaged by the arrangement, and the plaintiff was entitled to recover.

The Court granted a new trial, and the defendant excepted to it as error.

AKIN, for plaintiff in error.

UNDERWOOD, for defendant.

HARRIS, J.

It was objected below that Wiley had violated his agreement with Coalter by commencing suit before the expiration

of the period of indulgence. A complete answer to this, is the fact that Coalter failed to pay on his note the $1000 stipulated to be paid by him to Wiley on 1st April 1856; that promise constituted the consideration of the agreement for indulgence, and Coalter failing to comply, liberated Wiley.

The main question, however, in the case is, was Wiley bound to respond to Coalter for the amount of the note of Miles W. Johnson, which had been given by Coalter to Wiley as collateral security, Johnson, in the interval between the turning over of his note and the suit against Coalter, having become insolvent?

If the note of Johnson had been turned over simply as collateral, Wiley would thereby have been invested with all the powers of Coalter over the paper ; and if, by want of diligence, as an omission to sue when by suit a judgment could have been made productive, no doubt is entertained but that, to the extent of the damages sustained in such case by Coalter, Wiley would have been liable to respond. But by examining the receipt given by Wiley when taking Johnson's note as collateral, we find this condition attached: "Whenever the said Coalter's note is paid, I (Wyley) am to *deliver up* to said Coalter or his order, said note on Johnson," &c. No right of suit by Wiley is given by this receipt: on the contrary, by the strongest implication, there is a denial of this power.

How it is possible for human ingenuity to reconcile, upon this contract, a power or right in Wily to sue Johnson's note, reduce it to judgment, file it then in office as a court paper, with the requisition that *he should deliver up* Johnson's note to him or order, *upon the payment* of his, Coalter's, note, we are at a loss to conjecture. Wyly had no right to sue Johnson's note, and having none, can not be answerable for any consequences which have resulted from its not being done. Whenever Coalter pays his note, then, and not till then, has he a right to the delivery of Johnson's note. Coalter has never paid a cent on his note. Had Wyly sued

Johnson's note, the note, when placed in judgment, becomes thereby a court paper, is placed on file, and is then beyond the reach or control of the plaintiff or his attorney. How could Wyly, after thus having sued Johnson's note to judgment, and Coalter called on him and paid up his own note, "deliver up" to Coalter Johnson's note?

We can not but express surprise that a transaction in writing, so simple and capable of an easy and correct decision by keeping the contract steadily in view, should have been tangled up with questions which do not belong to the case, and which, in themselves, furnish no legal or equitable defence.

If Johnson became insolvent, and the debt due by him lost by suit not having been prosecuted on it, it is Coalter's fault, and he should bear the entire loss.

It is palpable, in scrutinizing the receipt, that Coalter, in seeking to get indulgence on his own note, sought also to get his indulgence for his friend Johnson. He must reap the harvest of his own sowing.

We put entirely aside, in the view we have taken of this case, the negotiations of Mr. Trammel, the attorney of Wyly; they were disaffirmed by his principal; they were made known at the time to Coalter, and he made no complaint of them; he sustained no injury in any degree by them: moreover, the note of Johnson was restored back to Wyly to be held by him, and to be delivered up when Coalter paid his own note. It is sufficient to say that the agreement with Johnson to indulge him was not within the scope of the powers of an attorney at law; and not being either authorized or acquiesced in by Wyly, he can not, by any legal principle with which we are acquainted, be affected by these negotiations.

The verdict in this case is a flagrant violation of law and evidence, and we cheerfully affirm the grant of a new trial by the Judge below.